```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/26/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MICHAEL STICKLER

                        Plaintiff,

      -against-                              22-CV-2449 (KMW)

                                                         **OPINION & ORDER**

IBM, INC.

                        Defendant.
-------------------------------------------------------X

      Plaintiff Michael Stickler brings this action alleging claims of gender discrimination and retaliation against Defendant International Business Machines Corporation ("IBM")[1] pursuant to the New York State Human Rights Law ("NYSHRL"). N.Y. Exec Law §§ 290 *et seq*. IBM has filed a motion for summary judgment. For the reasons set forth below, IBM's motion is granted.

## BACKGROUND

### I. Factual and Procedural Background[2]

      Plaintiff was employed at IBM as a software engineer from August 5, 2013, until he was discharged on December 31, 2021. (R. 56.1 Statement ¶ 3.) There is no dispute as to Plaintiff's technical strengths as an engineer (*see id.* ¶¶ 13, 27), however, he did not meet expectations that he collaborate with his Team members and further their projects. Between 2019 and his 2021 discharge, Plaintiff was repeatedly advised that his performance suffered from failures to, *inter*

---

[1] Plaintiff incorrectly refers to IBM as "IBM, Inc." in the caption of the complaint instead of "IBM Corporation." When the Court refers to "IBM," it refers to IBM Corporation.

[2] Plaintiff initiated this action before the Honorable Paul A. Crotty in March 2022. (Compl., ECF No. 1.) In December 2023, after discovery was completed, IBM moved for summary judgment. (Def.'s Mot., ECF No. 37; Def.'s Mem., ECF No. 41.) On April 15, 2024, the case was reassigned to the undersigned. Unless otherwise noted, the facts are undisputed and drawn from the parties' Local Rule 56.1 Statement. (*See* Def.'s Rebuttal to Pl.'s Response to Def.'s Local Rule 56.1 Statement, ECF No. 65) ("R. 56.1 Statement")).

*alia*, attend meetings of his Team members, respond to their messages, show leadership and initiative on Team projects, volunteer to help them, and keep Team members advised of the progress of his work.  (*See id.* ¶¶ 33, 38–39, 43, 50, 51–52, 54, 59–61, 65, 67–68, 80, 99.)  His value as a Team member sharply declined after he relocated to Chicago in November 2020 to live with his fiancée.  (*Id.* ¶¶ 36, 42–43.)  In February 2021, Plaintiff was identified as the lowest performer on his team because of "a return to [his] previous lack of engagement issues."  (*Id.* ¶¶ 51–52.)

After Plaintiff's fiancée's seven-year-old son arrived for a visit in March 2021, Plaintiff requested additional time off due, in part, to his childcare obligations.  (*Id.* ¶ 58; Pl.'s Opp'n at 2–3, ECF No. 58.)  In response to Plaintiff's request for additional time off, Plaintiff and the manager of his team, Ms. Duesterwald, approved a reduced work schedule during which Plaintiff would work at 75% capacity for two weeks and 90% capacity for the following six weeks.  (R. 56.1 Statement ¶¶ 72–73; Pl.'s Opp'n at 3.)  During those eight weeks, Plaintiff continued to perform poorly at work.  (*See* ¶¶ 80, 83–84.)  Ms. Duesterwald and others began planning to place Plaintiff on a program for underperforming employees (a "PIP").[3]  (*See* R. 56.1 Statement ¶¶ 61, 65–67, 74, 77–78, 80, 83, 84–87.)

Thereafter, on June 28, 2021, Plaintiff complained to Ms. Duesterwald that he had received less generous leave for childcare than two of his female colleagues.  (*Id.* ¶ 92.)  On July 9, 2021, Plaintiff was placed on a PIP, which lasted until September 7, 2021.  (*Id.* ¶¶ 98–99.)  Although he passed the PIP, Plaintiff's work in the five and a half months thereafter steeply deteriorated.  (*Id.* ¶¶ 105, 111–14.)  At the end of December, he was discharged.  (*Id.* ¶ 118.)

---

[3] IBM's PIP program consisted of assigning a "coach" to an under-performing employee, who would help the employee improve his performance, give him feedback as to whether he was improving, and finally, assess whether the employee achieved the goal of his PIP.  (PIP, Weisbrod Decl., Ex A, Pl.'s Ex. 21, ECF No. 45-6.)

2

In this action, Plaintiff claims that (1) IBM discriminated against him on the basis of gender in its adoption and application of leave policies; and (2) IBM retaliated against him for comments he made about this alleged discrimination. (Compl. at 6–7.) IBM denies both claims; it contends that Plaintiff fails to identify circumstances that permit an inference of discrimination or retaliation. (Def.'s Mem. at 2–3.)

IBM has moved for summary judgment on both claims.

## II.   Legal Standard

A court must grant summary judgment if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [the nonmoving party's] favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998). A court's "function is not to weigh the evidence, make credibility determinations or resolve issues of fact," but rather to determine whether there are issues to be tried. *Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir. 1997). "'Conclusory allegations, conjecture, and speculation,' as well as the existence of a mere 'scintilla of evidence in support of the [nonmoving party's] position,' are insufficient to create a genuinely disputed fact." *Hayes v. Dahlke*, 976 F.3d 259, 267–68 (2d Cir. 2020) (citations omitted).

## DISCUSSION

### I. Gender Discrimination Claim

#### A. Applicable Law

It is unlawful to discriminate against an individual on the basis of gender. N.Y. Exec. Law. § 296 (1)(a).[4] When there is no direct evidence of discrimination, the NYSHRL utilizes a three-step burden-shifting test similar to the long-standing *McDonnell Douglass* framework. *Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877, 2021 WL 396700, at *4 (S.D.N.Y. Feb. 4, 2021) (Preska, J.). The first two steps follow the traditional *McDonnell Douglass* burden shifting test.[5] At the third step, a motion for summary judgment claim is analyzed under both the traditional *McDonnell Douglass* framework and the newer "mixed motive" framework. *Hamburg v. New York Univ. Sch. of Med.*, 155 A.D.3d 66, 72–73 (2017). The mixed motive test can be met even where unlawful discrimination was only one of the motivating factors—even if it was not the sole motivating factor. *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 127 (2012).[6]

#### B. Application

The crux of Plaintiff's gender discrimination claim is that he was treated worse than two

---

[4] Following the 2019 amendments to the NYSHRL, New York State courts have analyzed NYSHRL claims pursuant to the standards set forth under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq;* a trend that courts in this Circuit are following. *Yost v. Everyrealm, Inc*., 657 F. Supp. 3d 563, 578–79 (S.D.N.Y. 2023) (Engelmayer, J.); *accord Cannizzaro v. City of New York*, 206 N.Y.S.3d 868, 884–85 (N.Y. Sup. Ct. 2023).

[5] At the first step, a plaintiff has the initial burden to establish a *prima facie* case. To do so a plaintiff must demonstrate (1) membership in a protected class; (2) satisfactory job performance; (3) differential treatment in a way that was more than trivial, insubstantial, or petty; and (4) differential treatment from a worker who was not a member of the protected class. *Id.* at *5. To satisfy his *prima facie* case, a plaintiff must demonstrate by a preponderance of the evidence that he has been treated worse than others because of his gender. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). A plaintiff must also present evidence that he was treated worse than a similarly situated employee outside his protected group. *Cooper v. Franklin Templeton Invs.*, No. 22-CV-2763, 2023 WL 3882977 (2d Cir. June 8, 2023). If this initial burden is met, the burden shifts to a defendant to offer a legitimate, nondiscriminatory reason for its actions. *Maynard,* 2021 WL 396700, at *4.

[6] At the third step under *McDonnell Douglas,* a plaintiff must establish that the offered reasons were a pretext for discrimination. *Hamburg*, 155 A.D.3d at 73.

4

female colleagues whom he alleges were granted more leave than he was granted. (R. 56.1 Statement ¶ 120.) Plaintiff complains he received unfair treatment compared to female members of his team who were granted more extensive leave to care for their children than he was.

First, Plaintiff complains that IBM's Parental Bonding Leave policy ("PBL") was "unfair" because it allowed more paid time to care for newborns than for his fiancée's seven-year-old child. (*Id.* ¶ 92.) IBM's PBL was adopted to encourage parents' bonding with newborns or newly adopted children. That policy states:

> IBM's paid Parental Bonding Leave helps you bond in the important weeks after you bring your child home. All parents (mothers, fathers or adoptive parents, including domestic partner parents) of a newborn or newly adopted child will receive 12 weeks of paid parental bonding leave within 12 months of the child's birth or adoption. At manager discretion, paid parental bonding leave can be flexible and intermittent.

(Employee Benefit Summary, Weisbrod Decl., Pl.'s Ex. A., Ex. 32 at 20, ECF No. 46-3.)

Second, Plaintiff asserts that one of the mothers was permitted an "exception" to IBM's PBL policy — she was permitted to take a portion of her paid bonding leave during the year *after* the birth of her newborn. (Pl.'s Opp'n at 6, 17.) This leave was after the PBL's time limit, but it was taken in the year right after the first 12 months of her child's life, and it thus furthered the PBL's goal of facilitating bonding between a newborn and the parent. (*Id.*; *see* Employee Benefit Summary at 20.)

Third, Plaintiff claims that the other woman was granted one day of leave pursuant to IBM's COVID-19 leave policy, which he asserted was not related to COVID-19. (Pl.'s Opp'n at 6, 17.) There is a dispute concerning whether the leave granted was an "exception," but the court will assume *arguendo* that it was an exception.[7]

---

[7] Plaintiff claims that the woman in question was granted an "exception" to the COVID-19 leave policy; Plaintiff's manager testified to the contrary, stating that the leave was COVID-19-related because the woman's need for the day off was occasioned by a COVID-related hybrid-school disruption. (Rule 56.1 Statement ¶ 131.) The court need not resolve this dispute, given that plaintiff never requested COVID-19-related leave. (*Id.* ¶¶ 79, 96, 135.)

Plaintiff has failed to establish his *prima facie* case, given that he was not similarly situated to his female colleagues whom he claims received better treatment because of their gender. *See Khwaja v. Jobs to Move Am.*, No. 19-CV-7070, 2022 WL 19410313, at *9 (S.D.N.Y. Oct. 22, 2022) (Cronan, J.) *R. & R. adopted as modified*, 2023 WL 2734420 (S.D.N.Y. Mar. 31, 2023) (granting summary judgment on a gender discrimination claim where the plaintiff was not eligible for parental leave and the employer followed its policies as they applied to the plaintiff).

Even if the Court were to find that Plaintiff established a *prima facie* case based on IBM's leave policies and practices, Defendant has offered nondiscriminatory reasons for allowing one mother to take part of her PBL in the year after her child's birth. This "exception" furthered the PBL policy's goal of encouraging bonding between parents and newborns. (*See* Employee Benefit Summary at 20.) Although Plaintiff claims he should have been given, as an exception to the PBL, more paid leave to care for a seven-year-old, he cannot show that the PBL policy or its application in practice discriminated on the basis of gender, given that the PBL is equally available to men and to women. (*Id.*)

Because Plaintiff fails to raise a genuine issue of fact, summary judgment is granted with respect to Plaintiff's gender discrimination claim based on IBM's adoption and application of its PBL and its COVID-19 Emergency Leave policies.

## II. Retaliation Claim

### A. Applicable Law

It is unlawful for an employer to retaliate against an employee on account of his having complained of discrimination. N.Y. Exec. Law § 296 (7).[8] If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Cobb v. Ellab Inc.*, No. 22-CV-1002, 2024 WL 1963430, at *7 (N.D.N.Y. May 2, 2024). If a defendant satisfies this burden, a plaintiff must rebut the rationale under either the third step of *McDonnell Douglass* or the mixed motive framework. *Id.* at *7.

### B. Application

Plaintiff contends that Defendant retaliated against him by his being (1) placed on a PIP, and (2) discharged. (Pl.'s Opp'n at 19–21.) The Court addresses both alleged instances of retaliation. The Court notes, as stated, *infra,* Plaintiff passed his PIP. (R 56.1 Statement ¶ 105.)

#### 1. Retaliation as it Relates to Plaintiff's Having Been Placed on a PIP

Plaintiff claims that the close proximity between his June 28 complaints and his being placed on a PIP on July 9 shows that it was his complaint that was responsible for his being placed on a PIP.[9] (Pl.'s Opp'n at 11, 19.) New York courts have held that less than two weeks between protected activity and retaliatory action can demonstrate causation. *See Kaplan v. New*

---

[8] A plaintiff establishes a *prima facie* case of retaliation under the NYCHRL by showing: (1) that he engaged in a protected activity; (2) that his employer knew of the protected activity; (3) that his employer "took an employment action that disadvantaged the plaintiff *in any manner*"; and (4) a causal connection between the protected activity and the negative employment action. *Marseille v. Mount Sinai Health Sys., Inc.*, No. 18-CV-12136, 2021 WL 3475620, at *11 (S.D.N.Y. Aug. 5, 2021) (Caproni, J.), *aff'd.*, No. 21-CV-2140, 2022 WL 14700981 (2d Cir. Oct. 26, 2022).

[9] The parties do not dispute the first two elements of the *prima facie* case. With respect to the third element, the Court notes that there is not uniformity in the Circuit as to whether PIPs constitute "adverse employment actions." The NYCHRL, however, does not require a plaintiff to demonstrate that an "adverse action" occurred. Instead, a plaintiff must show only that his employer "took an employment action that disadvantaged the plaintiff *in any manner.*" *Marseille,* 2021 WL 3475620, at *11. The Court will assume, *arguendo*, that Plaintiff's PIP both placed him at a disadvantage, and was an adverse employment action.

*York City Dep't of Health & Mental Hygiene*, 142 A.D.3d 1050, 1051 (2016). However, evidence of temporal proximity alone is insufficient to demonstrate retaliation. *Forrester v. Corizon Health, Inc.* 752 Fed. Appx. 64, 66 (2d Cir. 2018) (summary order).

Defendant has offered evidence of the many warnings that Plaintiff was given between 2019 and 2021 regarding the deficiencies in his performance, and has offered evidence that IBM was planning to place him on his PIP before his June 28 complaint. (*See* R. 56.1 Statement ¶¶ 61, 65–67, 74, 77–78, 80, 83, 84–87. A claim of discrimination based principally on temporal proximity fails when "gradual adverse job actions," including poor performance evaluations,[10] preceded the protected activity. *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). This includes when the action was being planned before the protected activity occurred— even if the action had not yet been taken. *See Richards*, 2021 WL 4443599, at *9 (dismissing plaintiff's NYCHRL retaliation claim where negative performance evaluations began a month before the protected activity occurred); *see also Owens v. City of New York Dep't of Educ.*, No. 17-CV-519, 2021 WL 3862974, at *16 (S.D.N.Y. Aug. 30, 2021) (Stein, J.), *aff'd*, No. 21-2875, 2022 WL 17844279 (2d Cir. Dec. 22, 2022) (finding that no reasonable jury could conclude that plaintiff had established a *prima facie* case of retaliation where documented performance issues preceded the protected activity).

As stated, *supra*, Defendant here produced substantial evidence, which Plaintiff has failed to rebut, that (1) before Plaintiff claimed discrimination, IBM had given Plaintiff negative performance evaluations for well over a year, and (2) before Plaintiff's complaint, IBM had

---

[10] The Court notes that judges in this Circuit have repeatedly held that causation cannot be inferred from temporal proximity where repeated critiques of performance, including negative performance evaluations, preceded the alleged protected activity. *See Richards v. City of New York*, No. 19-CV-10697, 2021 WL 4443599, at *9 (S.D.N.Y. Sept. 28, 2021) (Vyskocil, J.) (collecting cases).

8

already begun planning to place Plaintiff on a PIP. (*See* R. 56.1 Statement ¶¶ 33, 38–39, 43, 50, 51–52, 54, 59–61, 65–68, 74, 77–78, 80, 83, 84–87, 99.)

### 2. Retaliation as it Relates to Plaintiff's Discharge On December 31, 2021

For his claim of retaliation, Plaintiff relies on the fact that he was terminated five and a half months after he complained of discrimination. However, where a person is treated positively between the protected activity and the adverse action, an inference of retaliation is weakened. *Rossbach v. Montefiore Med. Ctr.*, No.19-CV-5758, 2021 WL 930710, at *6 (S.D.N.Y. Mar. 11, 2021) (Cote, J.). As stated *supra*, in the five and a half months following his complaint, Plaintiff was successful in completing his PIP. (R 56.1 Statement ¶ 105.)

However, thereafter, Plaintiff's work steeply deteriorated, with his appearing to be disengaged from his own work and the work of his teammates. Between late September and early December, two of Plaintiff's team lead and team manager expressed repeatedly their frustration with his work, which is documented in hundreds of Slack messages. (*See id.* ¶ 111.) These messages included, among others, statements that Plaintiff "meandered on what he worked on without updating anyone" and that he showed "zero teaming." (*Id.*) On December 2, 2021, Plaintiff's team lead sent a message to Ms. Duesterwald stating, "I don't know what to do at this point other than say I want him off the project even without a replacement[,] which is totally unfair to the project. But if he's just burning people's time without producing, it's worse having him here than losing a person[,]" (*Id.* ¶ 112) to which, Ms. Duesterwald responded, "I understand - there is a steep deterioration here and you have burnt a lot of time and effort trying to get something out of him." (*Id.*)

Based on the evidence cited above, no reasonable jury could conclude that IBM retaliated against Plaintiff for his June 28 comments. Plaintiff has thus failed to raise a genuine issue of

material fact with respect to either of his retaliation claims.

The Court grants summary judgment with respect to both of Plaintiff's retaliation claims.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety.  The Clerk of Court is respectfully directed to close the motion at ECF No. 37.

SO ORDERED.

Dated: New York New York
      August 26, 2024

*/s/ Kimba M. Wood*
**KIMBA M. WOOD**
**UNITED STATES DISTRICT JUDGE**